118 P.3d 894 (2005)
Scott CROW, Appellant,
v.
THE BOEING COMPANY, Respondent.
No. 54955-3-I.
Court of Appeals of Washington, Division 1.
August 1, 2005.
Publication Ordered August 30, 2005.
*896 Rodney R. Moody, Attorney at Law, Everett, WA, for Appellant.
Grant Josiah III Silvernale, Perkins Coie LLP, William Brendan Murphy, Isaac Ruiz, Attorney at Law, Seattle, WA, for Respondent.
COX, C.J.
¶ 1 Washington's Industrial Insurance Act (IIA) generally bars actions by workers against their employers for workplace injuries.[1] This statutory bar is subject to the narrow exception that such an action is not precluded where an employer deliberately intends to injure an employee.[2] Our courts have construed this provision to require that there be actual knowledge that an employee's injury is certain to occur and willful disregard of such knowledge.[3] Here, Scott Crow fails to establish any genuine issue of material fact for either of these requirements. Accordingly, we affirm the summary dismissal of this action against his employer, The Boeing Company (Boeing).
¶ 2 The facts are not substantially disputed. Crow's primary job was to install "dry bay barriers" in the wings of the Boeing 777 aircraft to allow it to carry fuel. To install the dry bay barriers Crow used a scaffolding arrangement to gain access to the area between the ribs of a vertically standing wing. Crow claims he injured his knee due to the hazardous scaffolding in his work area.
¶ 3 Crow alleges two problems existed with the scaffolding apparatus. First, he claims that the scaffolding plank was difficult to secure and tended to slide from side to side. Second, he claims that the plank itself left a gap on both sides of approximately 12 to 18 inches between the edge of the plank and the wing rib.
¶ 4 The record shows that Boeing management became aware of safety concerns regarding the scaffolding dating from 1998. Before Crow's injury, in June 2000, Boeing agreed to "create new tooling" for the scaffolding.
¶ 5 In July 2000, Crow was attempting to step from one scaffolding plank to another when he stepped into the gap between the scaffolding plank and the wing rib. He became wedged in the gap with his foot hanging in the air and his body resting on his right leg which was folded underneath his weight with his shoulder pressed against the wing rib. When Crow fell into the gap, the scaffolding plank itself did not slide.
¶ 6 Crow obtained workers' compensation benefits for his injuries. Nevertheless, Crow also sued Boeing for his workplace injuries. The trial court granted Boeing's motion for summary judgment, dismissing Crow's case *897 based on the IIA's exclusive remedy provision.
¶ 7 Crow appeals.

ACTUAL KNOWLEDGE OF CERTAIN INJURY
¶ 8 Crow first argues that the exception to the IIA applies here because Boeing had actual knowledge of a dangerous condition that was certain to cause injury. We disagree.
¶ 9 On review of summary judgment, we engage in the same inquiry as the trial court.[4] Summary judgment is affirmed if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[5] All facts are considered in the light most favorable to the nonmoving party, and summary judgment is granted only if, from all of the evidence, reasonable persons could reach but one conclusion.[6] The burden is on the moving party to show that there is no genuine issue as to any material fact.[7] "If the moving party satisfies its burden, the nonmoving party must present evidence that demonstrates that material facts are in dispute."[8] If the nonmoving party fails to do so, then summary judgment is proper.[9]
¶ 10 The IIA generally bars employee lawsuits against their employers in exchange for a system of compensation that provides "speedy, no-fault compensation for injuries sustained on the job[.]"[10] This statutory bar is subject to an exception, permitting employees to sue their employers when the employer deliberately injures the employee.[11] Washington courts have narrowly interpreted this exception.[12]
¶ 11 In Birklid v. Boeing Co., our supreme court held that, in order for an employer's actions to fall under the exception, the employee must prove: (1) "the employer had actual knowledge that an injury was certain to occur," and (2) the employer "willfully disregarded that knowledge."[13] In reaching its decision, the court declined to adopt the "substantial certainty" of injury and "weighing of consequences" tests of other states.[14]
¶ 12 The supreme court recently reiterated in Vallandigham v. Clover Park School Dist., "that in order for an employer to act with deliberate intent, injury must be certain; substantial certainty is not enough."[15] Mere negligence does not rise to the level of deliberate intention.[16] Further, gross negligence and a failure to follow safety procedures does not constitute a specific intent to injure.[17] Even an act that has substantial certainty of producing injury does *898 not rise to the level of specific intent to cause injury.[18] "Washington courts have repeatedly held that known risk of harm or carelessness is not enough to establish certain injury, even when the risk is substantial."[19] "The limited cases in which courts have held that there was a genuine issue of fact regarding knowledge of certain injury involved situations in which there was virtually no doubt injury would occur."[20] The Birklid test can be met in only very limited circumstances where continued injury is not only substantially certain, but certain to occur and ignored.[21]
¶ 13 In Vallandigham, the court applied the Birklid test in determining whether the Clover Park School District willfully disregarded actual knowledge of certain employee injury. The court recognized "that to some extent the two prongs of the Birklid test are not independent of each other."[22] "Where an employer has taken remedial steps to try to alleviate the risk of further injury to its employees, those actions are relevant both to the question of willful disregard and to the question of whether the employer was certain that injury would continue, in spite of its efforts."[23]
¶ 14 In Vallandigham, the court addressed the conflict between the trial court and the Court of Appeals regarding whether the school district had actual knowledge that employee injury was certain to occur at the hands of a violent student. Further, the court addressed the conflict between Divisions One and Two of the Court of Appeals as to what may constitute willful disregard, concluding willful disregard cannot be based on the simple fact that the employers remedial measures were ineffective.[24] The court concluded, "we reject any notion that a reasonableness or negligence standard should be applied to determine whether an employer has acted with willful disregard."[25]
¶ 15 In Birklid, employees were required to handle chemicals that were known to be toxic without proper protective equipment. The employer, (Boeing) anticipated that the chemical to be used would make workers sick. In spite of this knowledge, Boeing implemented use of the chemical in its manufacturing process, exposing workers to the chemical. "As Boeing's supervisor predicted, when full production began, workers experienced dermatitis, rashes, nausea, headaches, and dizziness. Workers passed out on the job."[26] There, the court concluded injury "was no accident."[27]
¶ 16 Crow argues that his situation is identical to that of the employees in Birklid where the employer had actual knowledge of a dangerous condition that continually injured employees. However, taking the facts in the light most favorable to Crow, he still fails to show that Boeing had actual knowledge of certain injury as required under Birklid.
¶ 17 Crow also argues that the "scope of the hazard," not only the mechanism in which Crow was injured, should be considered. However, even in doing so, the record indicates the type of repeated, continuous, certain injury sufficient to meet the first prong of the Birklid test did not occur here. Crow verified that he had used the scaffolding without injury for three years or more in his deposition that was considered in the motion for summary judgment. Crow stated that he *899 had no "near misses" at Boeing during a three year period while using the scaffolding. He also admitted that there was no 100 percent guarantee that a person who steps on the scaffolding would be injured.
¶ 18 Crow's admissions indicate that the certainty of injury involving the scaffolding does not rise to the level of certainty that existed in Birklid, Hope v. Larry's Markets,[28]Baker v. Schatz,[29] and Stenger v. Stanwood Sch. Dist.,[30] where employees were certain to be injured.
¶ 19 Here, by Crow's own admission, there was no certainty that Crow would be injured by using the scaffolding. Crow's misstep into the space between planks caused his injury, use of the scaffolding itself was not certain to cause injury.
¶ 20 In Hope v. Larry's Markets,[31] the court of appeals concluded that an employer had actual knowledge that injury was certain to occur when an employee repeatedly complained that cleaning chemicals were causing burns and a severe rash.[32] The Hope court noted that repeated, continuous injury caused by chemical exposure and the observation of the injury by the employer can satisfy the first prong of the Birklid test.[33] Because the plaintiff presented evidence that the employer knew its employees were being continuously injured, she had produced evidence sufficient to establish that the employer had actual knowledge that injury was certain to occur.[34]
¶ 21 Here, unlike the plaintiff in Hope, Crow presents no evidence that use of the scaffolding was certain to cause injury. Crow further fails to present evidence that Boeing observed its employees being continuously injured by the scaffolding.
¶ 22 In Baker v. Schatz,[35] employees sued when their employer repeatedly exposed them to toxic chemicals. Like the employees in Birklid, the Baker employees repeatedly complained of illness and injury and the employer knew that workplace chemicals were causing the illnesses but refused to take steps to protect the workers.[36] Significantly, the employer frequently reassured the workers that the chemicals were safe, despite the employer's knowledge to the contrary.[37] Therefore, the Court of Appeals held that the employer had actual knowledge that the employees were certain to be injured.[38]
¶ 23 In Stenger v. Stanwood Sch. Dist.,[39] two school employees sued their school district employer to recover for injuries they suffered at the hands of a special education student. The child inflicted between 1,316 and 1,347 injuries to employees in the preceding three years.[40] The District knew that the student inflicted multiple injuries on teachers and aides "almost on a daily basis."[41] "Given the frequency of [the students] outbursts, the number of injuries he inflicted, and the claims filed with the District, a jury could reasonably conclude that the District had actual knowledge that the staff would continue to be injured by [the student] in the future."[42]
¶ 24 The certainty of injury present in Stenger is not present in this situation. Crow was not injured frequently by use of the scaffolding. He fails to produce evidence *900 that the injuries he suffered occurred repeatedly either to him or to any other co-worker using the scaffolding.
¶ 25 The injuries Crow claims were caused by the scaffolding system do not reach the level of certain injury, as exposure to known toxic chemicals or daily exposure to a student who continually assaulted teachers in Birklid, Hope, Baker and Stenger. Accordingly, we conclude there was no genuine issue of material fact whether Boeing had actual knowledge that injury caused by the scaffolding was certain to occur. As a matter of law, the trial court properly dismissed Crows claim.

Prior Incidents
¶ 26 Crow argues that evidence of prior injuries creates a genuine issue of material fact whether the certainty of injury prong of the Birklid test is met. We disagree.
¶ 27 Crow cites Howland v. Grout,[43] for the proposition that prior injuries create a genuine issue of material fact regarding the certainty of injury requirement of the Birklid test. In Howland, the court concluded that injury was not certain to occur even where there was evidence that several employees had been injured as a result of the condition of the flooring in a store where they worked.[44] There, the court affirmed a summary judgment in favor of the employer. The plaintiff presented evidence that she and another employee injured their ankles in an area near the front counter of the store in two separate incidents, and other employees had been injured due to the flooring in other parts of the store.[45]
¶ 28 The court concluded that although previous injuries had occurred and the employer's attempt to repair the floor was negligent, the employers actions did not come within the deliberate injury exception of the exclusivity provision of IIA of willful disregard of certain injury.[46] Even when it was "arguably foreseeable, or maybe even substantially certain," based on prior accidents and the floor's condition that Howland might injure herself, the court concluded that prior injuries were insufficient to prove the employer had actual knowledge of certain injury as required by Birklid.[47]
¶ 29 Similar to the plaintiff in Howland, there was evidence here of prior complaints about a dangerous condition, the scaffolding. Other workers who used the scaffolding submitted a "Production Action Request" (PAR) to Boeing on June 1, 2000, six weeks before Crow's injury. The PAR stated that the "Primary concern is that plank [sic] is too narrow and possibility of mechanic falling through the gap between rib and plank exists." However, a prior complaint does not meet the actual knowledge of certain injury requirement of the Birklid test.
¶ 30 A careful review of the record shows incidents that Crow presents as evidence of injury, do not show as a matter of law injury was certain to occur. Further, the evidence presented indicates other employees may have been injured, but it was not certain that an individual would be injured when they went to work on the scaffolding unit.
¶ 31 We conclude the evidence of prior injuries from working on the scaffolding was not evidence that Boeing had actual knowledge of certain injury. Crow fails to meet the narrow exception in the IIA as stated in the actual knowledge of certain injury required by the Birklid test.

WILLFUL DISREGARD
¶ 32 Crow also claims that Boeing willfully disregarded the certainty of injury. Because *901 there is no showing of actual knowledge that injury is certain to occur, there can be no willful disregard by the employer of such an injury. Thus, there is no genuine issue of material fact as to this prong of the test.
¶ 33 We affirm the order granting summary judgment in favor of Boeing.
WE CONCUR: BECKER and BAKER, JJ.
NOTES
[1] RCW 51.04.010; Vallandigham v. Clover Park School District, 154 Wash.2d 16, 17-18, 109 P.3d 805 (2005).
[2] Vallandigham, 154 Wash.2d at 18, 109 P.3d 805 (citing Birklid v. Boeing Co., 127 Wash.2d 853, 865, 904 P.2d 278 (1995)).
[3] Vallandigham, 154 Wash.2d at 18, 109 P.3d 805 (quoting Birklid, 127 Wash.2d at 865, 904 P.2d 278).
[4] Vallandigham, 154 Wash.2d at 26, 109 P.3d 805 (citation omitted).
[5] CR 56(c).
[6] Vallandigham, 154 Wash.2d at 26, 109 P.3d 805 (citation omitted).
[7] Vallandigham, 154 Wash.2d at 26, 109 P.3d 805 (citation omitted).
[8] Vallandigham, 154 Wash.2d at 26, 109 P.3d 805 (citation omitted).
[9] Vallandigham, 154 Wash.2d at 26, 109 P.3d 805 (citation omitted).
[10] Folsom v. Burger King, 135 Wash.2d 658, 664, 958 P.2d 301 (1998).
[11] RCW 51.24.020 states: "If injury results to a worker from the deliberate intention of his or her employer to produce such injury, the worker or beneficiary of the worker shall have the privilege to take under this title and also have cause of action against the employer as if this title had not been enacted, for any damages in excess of compensation and benefits paid or payable under this title." (Emphasis added.)
[12] Vallandigham, 154 Wash.2d at 27, 109 P.3d 805; see also Judy v. Hanford Envtl. Health Found., 106 Wash.App. 26, 32, 22 P.3d 810, review denied, 144 Wash.2d 1020, 32 P.3d 284 (2001).
[13] Birklid, 127 Wash.2d at 865, 904 P.2d 278.
[14] Birklid, 127 Wash.2d at 865, 904 P.2d 278.
[15] Vallandigham, 154 Wash.2d at 18, 109 P.3d 805 (emphasis in original).
[16] Vallandigham, 154 Wash.2d at 27, 109 P.3d 805 (citation omitted).
[17] Vallandigham, 154 Wash.2d at 27, 109 P.3d 805 (citation omitted).
[18] Vallandigham, 154 Wash.2d at 29, 109 P.3d 805 (citation omitted).
[19] Shellenbarger v. Longview Fibre Co., 125 Wash.App. 41, 47, 103 P.3d 807 (2004) (citing Folsom, 135 Wash.2d at 667, 958 P.2d 301).
[20] Shellenbarger, 125 Wash.App. at 48, 103 P.3d 807 (citing Birklid, 127 Wash.2d 853, 904 P.2d 278; Hope v. Larry's Markets, 108 Wash.App. 185, 189-91, 29 P.3d 1268 (2001)).
[21] Vallandigham, 154 Wash.2d at 28, 109 P.3d 805.
[22] Vallandigham, 154 Wash.2d at 29, 109 P.3d 805.
[23] Vallandigham, 154 Wash.2d at 29, 109 P.3d 805.
[24] Vallandigham, 154 Wash.2d at 34-35, 109 P.3d 805.
[25] Vallandigham, 154 Wash.2d at 35, 109 P.3d 805.
[26] Birklid, 127 Wash.2d at 856, 904 P.2d 278.
[27] Birklid, 127 Wash.2d at 863, 904 P.2d 278.
[28] 108 Wash.App. 185, 29 P.3d 1268.
[29] 80 Wash.App. 775, 778, 912 P.2d 501 (1996).
[30] 95 Wash.App. 802, 977 P.2d 660 (1999) (We note that the court in Vallandigham, 154 Wash.2d at 35, 109 P.3d 805 rejected the court's holding in Stenger that willful disregard can be shown when remedial measures are ineffective.).
[31] 108 Wash.App. 185, 29 P.3d 1268.
[32] Hope, 108 Wash.App. at 189-90, 29 P.3d 1268.
[33] Hope, 108 Wash.App. at 193-94, 29 P.3d 1268.
[34] Hope, 108 Wash.App. at 194, 29 P.3d 1268.
[35] 80 Wash.App. 775, 778, 912 P.2d 501.
[36] Baker, 80 Wash.App. at 778-79, 912 P.2d 501.
[37] Baker, 80 Wash.App. at 784, 912 P.2d 501.
[38] Baker, 80 Wash.App. at 784, 912 P.2d 501.
[39] 95 Wash.App. 802, 977 P.2d 660.
[40] Stenger, 95 Wash.App. at 812, 977 P.2d 660.
[41] Stenger, 95 Wash.App. at 812, 977 P.2d 660.
[42] Stenger, 95 Wash.App. at 813, 977 P.2d 660.
[43] 123 Wash.App. 6, 94 P.3d 332 (2004), review denied, 110 P.3d 755 (2005).
[44] Howland, 123 Wash.App. at 11-12, 94 P.3d 332.
[45] Howland, 123 Wash.App. at 8, 94 P.3d 332.
[46] Howland, 123 Wash.App. at 11-12, 94 P.3d 332.
[47] Howland, 123 Wash.App. at 12, 94 P.3d 332 (citing Judy, 106 Wash.App. at 33, 22 P.3d 810); see also Shellenbarger, 125 Wash.App. at 48, n. 14, 103 P.3d 807 (number and frequency of injuries in Stenger was sufficient to determine a certainty of injury).